UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NERI TAWFIQ,

    *Plaintiff,*

v.

JAMES HINES,

    *Defendant.*

_____/

Case No. 1:22-cv-10328
District Judge Paul D. Borman
Magistrate Judge Patricia T. Morris

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 7)

**I.**     **RECOMMENDATION**

For the following reasons, **I RECOMMEND** that the Court **GRANT** Defendant's Motion for Summary Judgment. (ECF No. 7).

**II.**     **REPORT**

    **A.**     **Introduction**

After Neri Tawfiq had an alleged "outburst" at the VA's Saginaw Medical Center, officials implemented a "patient flag" which required Tawfiq to check in with VA police whenever he arrived at a VA facility for a medical appointment. Believing that the flag led to several dangerous encounters with police, Tawfiq filed for an injunction in state court, which, despite naming only the Saginaw Medical

1

Center's Chief of Staff, James Hines, would prohibit any VA employee from approaching Tawfiq to enforce the patient flag. But before the state court could conduct a hearing on the matter, Hines removed the action to this Court and later moved for summary judgment, arguing that Tawfiq's requested injunction would prevent VA employees from carrying out their official duties. Accordingly, Hines argues that Tawfiq effectively seeks an injunction against the United States, which is barred by sovereign immunity.

### B.     Factual Background

Neri Tawfiq is a veteran and a patient of the Veteran's Health Administration. (ECF No. 7-2, PageID.56–58). Tawfiq worked as a pharmacist at the VA's Saginaw Medical Center until March 2021 when Christopher Cauley, the Director of the Medical Center, terminated Plaintiff for inappropriate "conduct" upon the recommendation of Tawfiq's supervisor. (ECF No. 7-3, PageID.60). Cauley sent Tawfiq a letter to inform him of the decision; however, the letter did not explain why Tawfiq's supervisor recommended that he be terminated, and Tawfiq went to the VA later that day to discuss his termination with his supervisor. (*Id.* at PageID.60–62; ECF No. 7-4, PageID.64–65). According to Hines, Tawfiq had an "outburst" when he returned to the medical center, which included "banging on the door" of the "pharmacy office" and demanding to speak with his "former supervisors." (ECF No. 7, PageID.38; ECF No. 7-2, PageID.56). Apparently, some members of the

pharmacy staff felt that Tawfiq threatened their "personal safety" during the incident. (ECF No. 7-2, PageID.56).

About a week later, the Saginaw VA Medical Center's "Disruptive Behavior Committee" ("DBC") reviewed Tawfiq's outburst and determined that he "posed a risk to patient and staff safety when visiting VA medical facilities as a patient." (ECF No. 7, PageID.39 (citing ECF No. 7-2., PageID.56)). Based on that determination, the Committee placed a "Patient Record Flag" in Tawfiq's record which required Tawfiq to "check in with VA Police" whenever he arrived at a VA facility. (ECF No. 7-2, PageID.57). After checking in, VA police were required to "escort[]" Plaintiff to and from his appointments. (*Id.*) On at least one occasion after the DBC implemented this flag, officers at the Saginaw Medical Center had to escort Tawfiq from the facility after he entered the building without first checking in with officers. (ECF No. 7-4, PageID.68).

Tawfiq unsuccessfully appealed this flag to James Hines, the Chief of Staff at the Saginaw Medical Center and later filed an application for a personal protective order ("PPO") against Hines in the Saginaw County Circuit Court. (ECF No. 1, PageID.9–13; ECF No. 7-7, PageID.87). Section 600.2950a of the Michigan Compiled Laws provides a procedure for victims of "stalking" to obtain PPOs. Under this statute, an individual may petition "the family division of [a Michigan] circuit court to enter a" PPO against an individual who has "stalked" the petitioner.

3

Mich. Comp. L. § 600.2950a(1). Stalking, under Michigan law, is "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." *Id.* §§ 750.411h(d), 750.411i(d). Where a petitioner moves for an ex parte PPO, the Court must rule on the petition within one business day, and if the Court refuses to enter an order, the petitioner may request a hearing. Mich. Ct. R. 3.705(A)(1), (B)(1)(b).

In his PPO application, Tawfiq requests that the court prohibit Hines from "indirectly" (1) "following [him] or appearing within [his] sight," (2) "appearing at [his] workplace or residence," or (3) approaching or confronting [him] in a public place or on private property." (ECF No. 1, PageID.9). Tawfiq explained that he needed a PPO because Hines "harass[ed] him by making "false" allegation which caused Tawfiq to be arrested and to lose "[twelve]-high paying jobs." (*Id.* at PageID.13).

The Saginaw County Circuit Court denied Tawfiq's application, and Tawfiq later moved for a hearing. (*Id.* at PageID.11, 14). However, Hines removed the action to this Court pursuant to 28 U.S.C. § 1442(a)(1) (2018) before the scheduled hearing could occur. (ECF No. 1). Hines later moved for summary judgment, arguing that because the PPO would inhibit his official duties, the suit was

4

effectively one against the United States, which is protected by sovereign immunity. (ECF No. 7). Although the undersigned ordered Tawfiq to file a response brief, Tawfiq refused to do so, choosing instead to request a hearing before the Court. (ECF Nos. 9, 10). In his request, Tawfiq explained that he believed the AUSA assigned to this matter "submitted fraudulent information to the United States." (ECF No. 10, PageID.94). Tawfiq did not elaborate on this statement. (*Id.*)

      **C.**    **Summary Judgment Standard**

When a movant shows that "no genuine dispute as to any material fact" exists, the court will grant his motion for summary judgment. Fed. R. Civ. P. 56(a). In reviewing such a motion, the court must view all facts and inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears "the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). In making its determination, a court may consider the plausibility of the movant's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party cannot meet its burden of proof. *Celotex*, 477 U.S. at 325.

5

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). "[T]o withstand a properly supported motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party." *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 492 (D. N.J. 2010). In doing so, the non-moving party cannot simply assert that the other side's evidence lacks credibility. *Id.* at 493. And while a *pro se* party's arguments are entitled to liberal construction, "this liberal standard does not, however, 'relieve [the party] of his duty to meet the requirements necessary to defeat a motion for summary judgment.'" *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D. N.Y. 2004) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003)). "[A] pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D. N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine

whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. The court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992). After examining the evidence designated by the parties, the court then determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

"[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded." *Arrington v. Cenlar Federal Savings Bank*, No. 19-10571, 2020 WL 5258466, at *2 (E.D. Mich. Sept. 2, 2020) (citing *Carver v Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). "The movant bears the burden of showing the absence of a genuine issue as to a material fact 'regardless if an adverse party fails to respond.'" *Id.* at *2 (citing *Carver*, F.2d at 454-455). Accordingly, "[t]he Court may grant a motion for summary judgment to which the plaintiff failed to respond if it first 'examine[s] the moving party's motion for summary judgment to ensure that it has discharged its initial burden' of demonstrating 'the absence of a disputed question of material fact and a ground that

7

would entitle the moving party to judgment as a matter of law.'" *Simpson v. Metropolitan Life Insurance Corporation*, No. 18-cv-11724, 2019 WL 1354186, at *2 (E.D. Mich. Mar. 26, 2019) (citing *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005)).

### D. Analysis

#### 1. Sovereign Immunity

The United States and its agencies are immune from suit without their consent. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554 (1988)). This "axiomatic" principle, known as sovereign immunity, is "jurisdictional in nature" as "the terms" of the federal government's "consent to be sued" defines a court's authority to "entertain" a lawsuit against the federal government. *Id.*; *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586, (1941). Here, Cauley argues that although he is named as the defendant in Tawfiq's PPO, the PPO, in effect, is a lawsuit against the federal government because it would inhibit Cauley's ability to perform his official duties as the medical director of the Saginaw VA. (ECF No. 7, PageID.42). Accordingly, Hines argues the Court lacks jurisdiction to grant Tawfiq's PPO. (*Id.*)

Federal employees are not, themselves, immune from suit. Officials may be held personally liable for their wrongful actions, despite being an "instrumentality of the sovereign." *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S.

682, 686–87 (1949) (quoting *Brady v. Roosevelt S.S. Co.*, 317 U.S. 575, 580 (1943)). However, a suit that names a federal officer may, in effect, seek relief from the federal government. *Id.* at 687. And where that is so, the lawsuit is barred by sovereign immunity. *Id.*

To determine whether a suit which names an individual officer is actually a suit against the sovereign, the Court looks to the nature of the relief sought. *Id.* at 687–88. If the judgment sought by the plaintiff would not "require action by the sovereign or disturb the sovereign's property," then the suit is against the named defendant. *Id.* at 687. But if, on the other hand, the plaintiff seeks to enjoin the federal government or to collect funds from the treasury, then the suit is, in effect, a suit against the Federal Government. *See id.* Accordingly, where a plaintiff names an individual officer as the defendant to recover monetary damages for the officer's "personal actions," there would rarely be any dispute that the Plaintiff seeks relief exclusively from the defendant, and that the defendant would not be protected by sovereign immunity. *Id.*

But the Supreme Court has recognized that this inquiry may become "difficult" where a plaintiff requests injunctive, rather than monetary, relief. *Id.* at 688. Because the federal government "can act only through [its] agents," where a plaintiff requests injunctive relief to remedy some harm inflicted by a government official, such an injunction will often require some action on the part of the

9

sovereign. *Id.* at 688–89 ("The relief sought in this case was not the payment of damages by the individual defendant . . ., it was asked that the court order the War Assets Administrator . . . not to" carry out an official action). For that reason, the Court recognized that suits for injunctive relief against officers would not be suits against the sovereign if the suit concerns actions the officer made while acting outside the scope of his or her authority. *Id.* at 689–91. For example, an officer who "purports to act as an individual," who acts beyond his or her statutory authority, or who acts in a manner that violates the constitution, does not act within the scope of his or her authority, and a suit for injunctive relief concerning such actions likely would not impact the sovereign. *Id.*

Reading these examples in a vacuum, one might infer that a suit against a federal official is actually a suit against the federal government whenever it challenges an action taken within the official's scope of authority. And this appears to be how Hines interprets *Larson* and similar cases, positing that "a suit against a federal official acting in the scope of their employment is a suit against the sovereign . . . ." (ECF No. 7, PageID.42). However, although the *Larson* Court reasoned that a suit for injunctive relief against a federal employee, concerning actions within the scope of the official's authority, would generally constitute a suit against a sovereign, that was only because the Court recognized that an injunction to correct an employee's official conduct would generally require the court to order some other

10

official action. *See Stafford v. Briggs*, 444 U.S. 527, 546 (1980) (Stewart, J., dissenting). But if the requested injunction would only impact the official personally, then these concerns would be obviated. *See Larson*, 337 U.S. at 704 (explaining that sovereign immunity bars injunctive relief against government officials *only* because courts should not "restrain the Government from acting, or . . . compel it to act"). Accordingly, to determine whether a suit against an official is actually a suit against the sovereign, the focus of the inquiry is the relief sought, not the challenged action. *See Al-Nashiri v. MacDonald*, No. 11-5907 RJB, 2012 WL 1642306, at *9 (W.D. Wash. May 10, 2012); *Neely v. Blumenthal*, 458 F. Supp. 945, 953 (D.D.C. 1978). Regardless of whether the defendant acted within the scope of his or her authority, the federal government is the actual defendant only where the plaintiff seeks a remedy that burdens the sovereign. *See Sloan Shipyards v. U.S. Shipping Bd. Emergency Fleet Corp.*, 258 U.S. 549, 567 (1922) ("An instrumentality of Government he might be and for the greatest ends, but the agent, because he is agent, does not cease to be answerable for his acts.").

This is consistent with how the Court has analyzed sovereign immunity in the Eleventh Amendment context. There, the Court delineates between official capacity and individual capacity suits, explaining that "an official-capacity suit is, in all respects other than name, . . . a suit against the entity," whereas a personal capacity suit "impose[s] personal liability upon a government official for actions he takes

under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Only actions against the officer in his or her official capacity are barred by sovereign immunity—a plaintiff may hold a government officer individually liable for actions taken within his or her scope of employment. *Id.*; *see Ladd v. Marchbanks*, 971 F.3d 574, 578 (6th Cir. 2020) (explaining that § 1983 "does not abrogate the States' sovereign immunity"). Thus, the applicability of sovereign immunity depends on the remedy, not the capacity in which the official acted.

And here, it appears that Tawfiq asks the court to enjoin the VA from enforcing the patient flag, a remedy which would burden the sovereign. Tawfiq asks the Court to prohibit Hines from "indirectly" appearing at Tawfiq's workplace or residence, or within Tawfiq's sight. (ECF No. 1, PageID.9). He also asks that the Court enjoin Hines from indirectly "approaching or confronting [him] in a public place or on private property." (*Id.*)

Read literally, this injunction would not inhibit Hines' ability to conduct his official duties—the injunction would only prohibit Hines, or an agent of his, from approaching Tawfiq. (*Id.*) And because there is no evidence that Hines's official duties require him to interact with Tawfiq in person, or that Hines either enforces the patient flag himself or supervises the officials who do, it seems that the injunction would not inhibit Hines' ability to carry out the duties of his office.

However, it appears that Tawfiq is really asking the Court to enjoin any employee of the VA from enforcing the patient flag. In his application for a PPO, Tawfiq explains that he needs a PPO because Hines made false "allegations" against him by telling staff at other medical facilities that Tawfiq is a "threat to all staff employees." (*Id.* at PageID.13 (internal quotation marks omitted)). According to Tawfiq, these allegations led to him being "arrested and almost losing [his] life twice." (*Id.*) He also states that the allegations caused him to lose "[twelve] high paying jobs." (*Id.*) The "allegations" Tawfiq refers to appear to be the patient flag, and Tawfiq seems to equate Hines "indirectly" approaching him with VA officials enforcing the patient flag. (*See id.* at PageID.9, 13; ECF No. 7-2, PageID.56–58).

This differs from a similar PPO application Tawfiq filed against the medical director of the Saginaw VA, Christopher Cauley. (*Tawfiq v. Cauley*, No. 1:22-cv-10245, ECF No. 6-2, PageID.51). There, Tawfiq requested an injunction that would prohibit Cauley from (1) "appearing at [Tawfiq's] workplace or residence," (2) "entering onto or remaining on property owned, leased, or occupied by" Tawfiq, (3) "threatening to kill or physically injure" Tawfiq, or (4) "purchasing or possessing a firearm." (*Id.*) Yet, the PPO request explicitly allowed Cauley to approach Tawfiq "in a public place" and to contact Tawfiq by phone or mail. (*Id.*) For that reason, the PPO would not have prevented Cauley from enforcing the patient flag, which only requires Tawfiq to "check in with VA police" prior to his medical

13

appointments" so that he may be escorted, and the PPO would not have prevented Cauley from "reporting Tawfiq's inappropriate conduct" if necessary. (*Id.* at ECF Nos. 6, PageID.36, 6-4, PageID.78).

Unlike the requested PPO against Cauley, Tawfiq's requested PPO here could impact the VA's ability to enforce the patient flag. While Tawfiq's PPO against Cauley only restricted Cauley's ability to approach Tawfiq in his home or workplace, while allowing Cauley to approach Tawfiq, directly or indirectly, in all other places, the PPO here would prohibit VA employees from approaching Tawfiq in VA facilities. (*See* ECF No. 1, PageID.9, 13). Moreover, Tawfiq requested the PPO against Cauley because he believed that Cauley instigated a false arrest at his home, supporting the inference that there, Tawfiq only desired an injunction that would prohibit Cauley from contacting him at his home. (*Cauley*, No. No. 1:22-cv-10245, ECF No. 13, PageID.132–34). Here, however, Tawfiq only requests the PPO because of the patient flag, and his requested relief, although vague, appears to be designed to prohibit the VA from enforcing the flag. (*See* ECF No. 1, PageID.9, 13). Accordingly, because Tawfiq's PPO would prevent Hines or other employees of the VA from carrying out their official duties, the suit is, in effect, one against the sovereign, and the Court lacks jurisdiction over the matter. *See Larson*, 337 U.S. at 687–88.

**2.      Whether the Court Should Dismiss or Remand the Action**

I further suggest that the Court dismiss Tawfiq's complaint, rather than remand the matter to state court. Under 28 U.S.C. § 1447(c) (2018), a federal court "shall" remand a matter, originally removed from state court, "at any time" that the Court determines that it lacks subject matter jurisdiction. Although the word "shall" appears to mandate remand whenever a district court finds that it lacks subject matter jurisdiction, § 1447(c) must be read in "context" with surrounding statutes. *See Roberts v. Sea-Land Services, Inc.*, 566 U.S. 93, 101 (2012). Included in that context is the statute through which Hines removed this action to federal court—28 U.S.C. § 1442(a)(1) (2018), which allows any officer of the United States, "or any person acting under that officer," to remove an action commenced against him or her in state court to a federal district court.

Reading § 1442(a)(1) together with § 1447(c), I suggest that a district court need not remand a matter to state court where the district court loses jurisdiction after the defendant succeeds on a federal immunity defense. Indeed, the purpose of § 1442(a)(1) is to "protect the Government from having to litigate immunity defenses in hostile state courts." *Hammer v. United States*, 989 F.3d 1, 3 (D.C. Cir. 2021) (citing *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)). This right to removal is "absolute" and it "should not be frustrated by a narrow, grudging [statutory] interpretation." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Willingham*, 395 U.S. at 407. Mandating remand after a federal officer successfully

raises sovereign immunity would frustrate the officer's "absolute" right to have his or her federal defense decided by a federal court. *Maypenny*, 451 U.S. at 242. Moreover, remand would frustrate the purpose of sovereign immunity, which is intended not just to protect the government from liability, but also from "a long drawn[-]out lawsuit." *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Accordingly, I suggest that the Court dismiss Tawfiq's complaint—the government need not "spend one more ounce of [the taxpayers' dollars] on the re-litigation of a case it has already won." *Hammer*, 989 F.3d at 3; *see also Murray v. I.R.S.*, 923 F. Supp. 1289, 1290–91 (D. Idaho 1996).

### E.   Conclusion

For the reasons discussed above, **I RECOMMEND** that Defendant's Motion for Summary Judgment, (ECF No. 7), be **GRANTED**.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human*

*Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 29, 2022                     S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge